IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANE DEVINE,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | No.:   14-1072 |
| | : | |
| **MIDDLETOWN TOWNSHIP, et al.,** | : | |
| Defendants. | : | |

MEMORANDUM

**SITARSKI, M.J.**                                                                                           **April 29, 2016**

Presently pending before the Court are Defendants' Motion to Preclude the expert testimony of Dr. R. Paul McCauley, (Defs.' Mot. to Preclude, ECF No. 43), and the parties' responses thereto, (Pl.'s Resp., ECF No. 47; Defs.' Reply, ECF No. 48; Pl.'s Sur-reply, ECF No. 54).[1]  For the reasons that follow, Defendants' motion shall be **GRANTED IN PART** and **DENIED IN PART**.

I.     **FACTUAL AND PROCEDURAL HISTORY**

Because the Court writes primarily for the parties, the Court references only the facts relevant to its consideration of this motion.

At approximately 3:30 a.m. on February 23, 2012, police officers Joseph Shuck, Joseph Buckley, and Mark Leonhauser ("the officers") of the Middletown Township Police Department responded to a burglary call at the residence of Michael F. Devine ("Decedent").  (Defs.' Mot. to Preclude 1).  Upon arriving at the scene, Officer Shuck encountered Decedent, who was moving

---

[1] The Honorable C. Darnell Jones, II referred Defendants' Motion to the undersigned for disposition.  (Order, ECF No. 45); *see also* 28 U.S.C. § 636(b)(1)(A) (permitting a court to designate a magistrate judge to "hear and determine any pretrial matter pending before the court" with enumerated exceptions).

about in a "weird" and zombie-like manner. (Pl.'s Resp 1). Decedent displayed a knife and allegedly threatened to kill Officer Shuck. (*Id.*). Decedent failed to comply with verbal warnings from the officers to stop and drop his weapon, and was fatally shot. (Defs.' Mot. to Preclude Ex. B. 51).

On February 24, 2014, Diane E. Devine ("Plaintiff"), Decedent's wife, filed a civil rights suit against Middletown Township, Middletown Township Police Department, Joseph Shuck, Joseph Buckley, and Mark Leonhauser ("Defendants"). She alleges federal claims pursuant to 42 U.S.C. Section 1983 for excessive force (Count I), state created danger (Count II), and derivative supervisory liability (Count III), and Pennsylvania state law claims of assault and battery (Count IV) and negligence (Count V) arising out of the death of Decedent. (Compl., ECF No. 1). At this point, all claims remain in the case.[2]

The parties engaged in discovery, and Plaintiff retained R. Paul McCauley, Ph.D. ("Dr. McCauley") as an expert witness. (Pl.'s Resp. Br. 2). Dr. McCauley is a Professor Emeritus of Criminology and former Chairman of the Department of Criminology at the Indiana University of Pennsylvania. (Pl.'s Resp. Ex. A 1, ECF No. 47-4). He is a former Pennsylvania municipal police officer and a certified state police instructor in Pennsylvania, Kentucky, and Florida. (*Id.*). He has written and taught extensively on police administration, operations, and policies. (*Id.* at 1-2.)

On January 12, 2015, Dr. McCauley produced an expert report in this matter. Dr. McCauley opined that, given Decedent's bizarre conduct when the officers arrived at the scene, they should have classified Decedent as an "Emotionally Disturbed Person" ("EDP") and structured their response in accordance with police practices for dealing with EDPs, which

---

[2] Summary judgment is fully briefed. (Defs.' Mot. Summ. J., ECF No. 44; Pl.'s Resp. Opp'n. Mot. Summ. J., ECF No. 49).

include: using a calm, quiet, and nonthreatening approach; moving slowly; and avoiding threats or aggressive behavior.  (*Id.* at 7-10, 13).  According to Dr. McCauley, the officers violated accepted police practices by "rapidly approach[ing]" Decedent and yelling "variable and multiple and conflicting commands."  (*Id.* at 13).  Dr. McCauley further asserts that the officers unnecessarily escalated the dangerous nature of the situation through their tactical errors, which included failing to act as a coordinated team; failing to carry and/or employ non-lethal weapons, such as a taser; and failing to take advantage of readily available cover to minimize any potential threat and instead allowing Decedent to approach within a ten foot radius (*Id.* at 18-19).  On March 26, 2015, Defendants deposed Dr. McCauley.  (Defs.' Mot to Preclude Ex. B).  Thereafter, Dr. McCauley prepared a supplemental report.  (Def.'s Mot. to Preclude Ex. C).

Defendants have moved to preclude Dr. McCauley from testifying in this matter under Federal Rule of Evidence 702, contending he lacks the appropriate qualification and his testimony is irrelevant.  (Defs.' Mot. to Preclude 2-8).  They also contend that Dr. McCauley's testimony embraces ultimate legal conclusions, and therefore should be precluded on that basis.  (*Id.* at 8-10).  The matter is fully briefed and ripe for disposition.

II.     **LEGAL STANDARD**

A district court has broad discretion in determining the admissibility of evidence.  *See Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002) (not precedential).  When faced with a proffer of expert testimony, the trial court must consider "'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'"  *Id.* (quoting *Daubert v. Merrell–Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

"These gatekeeping requirements have been extended to apply to all expert testimony." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)).

The admissibility of expert opinion testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained that Rule 702 embodies a "trilogy of restrictions" on the admissibility of expert testimony: (1) qualification; (2) reliability; and (3) fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The party offering the expert must prove each of these requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999).

### III.   DISCUSSION

Defendants have moved to preclude Dr. McCauley for three reasons: (1) he is not qualified under *Daubert* to opine as to police tactical decisions; (2) his opinion is not relevant; and (3) his opinion invades the province of the jury. (Defs.' Mot. to Preclude 3). For the reasons that follow, I find that Dr. McCauley qualifies as an expert and his opinion is relevant to the

Fourth Amendment use of force claim.[3]  However, I agree with Defendants that Dr. McCauley's testimony should be limited to avoid reaching the ultimate issue for the jury.

###    A.       Qualification

"Qualification 'refers to the requirement that the witness possess specialized expertise.'" *Ellison v. United States*, 753 F. Supp. 2d 468, 475 (E.D. Pa. 2010) (quoting *Schneider*, 320 F.3d at 404).  The Third Circuit has interpreted this prong of *Daubert* liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." *Schneider*, 320 F.3d at 404.  As a result, the Third Circuit instructs that trial courts should not insist on a certain type of degree or background when evaluating the qualifications of an expert. *See Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) ("*Paoli I*") ("The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such." ) (quoting Fed. R. Evid. 702); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("*Paoli II*") (The Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications.").  "This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).  Therefore, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Id.* (quoting *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996)).

---

[3] The parties do not address whether Dr. McCauley's proposed testimony impacts the state-created danger or supervisory liability claims and therefore, I do not address those issues here.

The parties do not dispute that Dr. McCauley is qualified to opine about police policies and procedures.[4]  (Defs.' Reply Br. 5-6; Pl.'s Resp. 10).  However, Defendants contend that McCauley is not qualified to testify about the "tactical" decisions the officers made on the night question, because his expertise does not extend to "tactical decisions."  (Defs.' Mot. to Preclude 4-5).  In response, Plaintiff argues that Defendants' attempted distinction between tactics and practices is meaningless, since Dr. McCauley's so-called "tactical" opinions are merely reflections of how the officers deviated from proper procedures in light of the circumstances they faced.  (Pl.'s Resp. 9-12).  She further argues that to the extent there is any distinction between tactics and practices, Dr. McCauley is qualified to opine as to tactical decision-making by virtue of his academic background and experience.  (*Id.*)

I agree with Plaintiff that Defendants' qualification argument relies on an artificial distinction between police tactics and police practices.  In *Sargent v. Commonwealth of Pennsylvania*, a decision from the Western District of Pennsylvania, the Court allowed Dr. McCauley to testify as to proper procedures in apprehending a suspect and whether the officers followed those procedures, so long as his testimony was elicited in response to proper hypothetical questions and did not reach the ultimate jury question.  No. 13-00730, 2015 WL 6447742, at *2 (M.D. Pa. Oct. 26, 2015).  Though the Court in *Sargent* was considering the relevance of the proffered testimony, and not Dr. McCauley's qualification to give it, its reasoning reflects an implicit rejection of the distinction Defendants in this case are attempting to draw.  The Court explained: "Dr. McCauley's testimony concerning the use of force that would

---

[4]  The Court agrees that Dr. McCauley is qualified in this respect: he is a Professor of Criminology at Indiana University of Pennsylvania; holds a Ph.D. in criminal justice; has taught, written, and lectured about police practices for more than two decades; and, has served as a police officer.

have been authorized in a situation like the one [d]efendant encountered is, in effect, testifying as to examples of standard police practices, as well as the proper level of force to be used by police in various situations . . ." *Id.*

In this case, I likewise conclude that Dr. McCauley's proffered testimony is a reflection of his expertise as to standard police practices and procedures related to use of force, identification of EDPs and appropriately responding to those situations. Indeed, Dr. McCauley testified at his deposition that to the extent his opinion reached tactical issues, it was "based on policy, established policy in [Middletown Township Police Department] and accepted police training and practices in the country." (Def.'s Mot. to Preclude Ex.B 72:16-20, ECF No. 43-2 [hereinafter "McCauley Dep"]). Defendants' attempt to portray Dr. McCauley's opinion as divorced from police policies and practices, and therefore outside of the scope of his expertise, is unavailing.

In reaching this conclusion, the Court is mindful of the Third Circuit's repeated emphasis on construing the qualification prong of *Daubert* liberally. Furthermore, I note that Defendants cite to no cases, in this Circuit or elsewhere, that have found Dr. McCauley unqualified. By contrast, several courts within this Circuit have permitted Dr. McCauley to testify as to whether police conduct in a given situation was in conformance with established law enforcement policies and procedures.[5] *See, e.g.*, *Sargent*, 2015 WL 6447742, at *3; *Grant v. Winik*, 948 F. Supp. 2d 480, 489 (E.D. Pa. 2013), *appeal dismissed* (Aug. 29, 2013) (determining *sua sponte* that "by virtue of his education and experience, Dr. McCauley is qualified to render an opinion regarding police administration, *operations*, and policies.") (emphasis added); *Damiani v.*

---

[5] However, as addressed in part C, *infra*, to the extent Dr. McCauley's testimony infringes on the ultimate issue for the jury—whether the use of force was unreasonable and excessive—that testimony shall be precluded.

*Momme*, No.11-2534, 2012 WL 1657920, at *2, (E.D. Pa. May 11, 2012) (Dr. McCauley permitted to testify "regarding the proper way to handcuff individuals so as to prevent injuries, as well as injuries that may result from improper handcuffing and escorting of individuals …"); *Burger v. Mays*, 176 F.R.D. 153, 157 (E.D. Pa. 1997) (Dr. McCauley permitted to testify as to whether the defendant officer's actions "were in line with standard police procedures." ). Additionally, Defendants will have other opportunities to challenge Dr. McCauley's qualifications or methodology. *See Daubert, 509 U.S.* at 596 ("Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

Accordingly, I find that Dr. McCauley is qualified under *Daubert* to testify regarding the Fourth Amendment excessive force claim.

**B.    Fit**

Defendants next argue that Dr. McCauley's opinion is irrelevant under the third prong of *Daubert*. (Defs.' Reply Br. 3-5; Defs.' Mot. to Preclude 5-8). According to Defendants, Dr. McCauley admitted that the officers were justified in using lethal force at the moment of the seizure, (Def.'s Mot. to Preclude 4-5) (citing McCauley Dep. 72:16-20, 75:19-21; 83:25-84:3, 84:12-16), but then opined that, had the officers made different decisions prior to that moment, the need to use deadly force would have never arisen. (Defs.' Reply Br. 3) (citing McCauley Dep. 58:2-10, 71:4-72:23, 84:3-85:4). Defendants submit that this opinion is irrelevant under Third Circuit precedent, which provides that "plaintiffs may not base an excessive force claim on the premise that the officers' actions created a situation in where deadly force became necessary." (*Id.* at 4) (citing *Lamont v. New Jersey*, 637 F. 3d 177, 185 (3d Cir. 2011)). They also contend that his opinions are conclusory. (*Id.* at 7-8). Plaintiff responds that Defendants

8

mischaracterize Dr. McCauley's opinion and the decisional law, and fail to identify which aspect of Dr. McCauley's opinion is conclusory. (Pl.'s Resp. 3-8). I agree with Plaintiff to the extent that certain portions of Dr. McCauley's testimony may be helpful to the finder-of-fact in deciding the Fourth Amendment use of force claim.

For expert testimony to meet the *Daubert* "fit" requirement, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Amadio v. Glenn*, et al., No. 09-4937, 2011 WL 336721, at *4 (E.D. Pa. 2011) (expert testimony satisfies the "fit requirement" if it is "sufficiently tied to the facts of the case [so] that it will aid the jury in resolving a factual dispute."). As framed by the parties, the issue is whether Dr. McCauley's testimony will help the fact-finder resolve the Fourth Amendment excessive force claim. The elements of this claim are that (1) a seizure occurred and (2) the seizure was unreasonable.[6] *See Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). In the context of addressing an officer's use of deadly force to stop a fleeing shoplifter, the Third Circuit set forth the reasonableness inquiry as follows:

> Giving due regard to the pressures faced by the police, was it objectively reasonable for the officer to believe, *in light of the totality of the circumstances*, that deadly force was necessary . . . and that the suspect posed a significant threat of death or serious physical injury to the officer or others? The factors to consider include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Abraham v. Raso*, 183 F.3d 279, 289 (3d Cir. 1999) (emphasis added) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

---

[6] There is no question that the Decedent was "seized" when he was shot and killed. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.").

Defendants argue that Dr. McCauley's opinion is irrelevant because he admitted that police officers have no legal duty to retreat when confronted with deadly force. (Def.'s Mot. to Preclude 4-5) (*citing* McCauley Dep. 72:16-20, 75:19-21; 83:25-84:3, 84:12-16). Though he agreed that officers do not have a duty to retreat when faced with deadly force, (McCauley Dep. 72:21-23), Dr. McCauley testified at his deposition that the reasonableness of the use of force in any given scenario depends on the totality of the circumstances, which includes, but is not limited to, whether a police officer reasonably believed himself to be in imminent danger such that he had no duty to retreat. (*Id.* at 82:16-25, 83-84). He maintained that by leaving their cars and allowing Decedent to approach within a radius in which his knife became a threat, the officers in this case deviated from established practices and proper protocol. (*Id.* at 83:14-84:16). Thus, although Defendants are right that Dr. McCauley agreed that officers do not have a legal duty to retreat when faced with deadly force, he was careful to explain that in his opinion this did not *per se* render the officers' conduct both before and after the moment of seizure reasonable. Defendants' argument to the contrary is unsubstantiated, and does not provide a basis to exclude the proffered testimony as irrelevant.

Next, Defendants contend that Dr. McCauley's opinion is irrelevant in light of precedential Third Circuit decision of *Lamont v. New Jersey*, 637 F.3d 177 (3d Cir. 2011). In *Lamont*, law enforcement officers pursued a suspected car thief into the woods. After being ordered to show his hands and freeze, the suspect made a motion as if he were drawing a gun out of his waistband; the officers fired thirty-nine rounds in response, killing the suspect. *Lamont*, 637 F.3d at 179-80. Based on a distinction between proximate and superseding causation, the Court rejected the plaintiff's argument that the officers should not have pursued the suspect into the woods, but rather should have set up a perimeter around the woods and used a police dog to

flush the suspect out. *Id*. at 185. The Court explained that even if the officers acted unreasonably in choosing to enter the woods rather than take other measures, the decedent's "noncompliant, threatening conduct in the woods was a superseding cause that served to break the chain of causation between the entry and the shooting." *Id*. at 186 (citation and internal quotation marks omitted). Here, Defendants submit that Decedent's failure to comply with the officers' instructions to stop, drop the knife, and get on the ground, is akin to the conduct of motioning to pull a gun out of a waistband. (Def.'s Mot. to Preclude 6-7). Thus, they argue that even if Dr. McCauley opines that the officers acted unreasonably in failing to classify Decedent as an EDP or take other measures, his opinion will not help the fact-finder because Decedent's own conduct was the superseding cause of his death.

Defendant's reliance on *Lamont* is misplaced. In *Lamont*, the Third Circuit was considering whether the grant of summary judgment was appropriate, not whether it was proper to exclude expert testimony as irrelevant. The matter before this Court is Defendants' *Daubert* motion, and it is not appropriate in this context for the Court to reach any determination as to whether Plaintiff's 1983 excessive force claim can proceed if it is indeed based on the theory that the officers created the scenario in which deadly force became necessary. While Defendants' argument <u>may</u> win the day on summary judgment, the use of force claim remains in the case at this stage. *Raso* leaves open the question of the officers' pre-seizure conduct. *Raso*, 183 F.3d at 289; *see also Grazier v. City of Philadelphia*, 328 F.3d 120, 127 (3d Cir. 2003). Thus, it is for the fact-finder to decide whether the officers should have taken different steps, based on their observations of the Decedent and the totality of the circumstances they faced prior to the use of deadly force. Dr. McCauley's testimony as to police policies and procedures in classifying and managing situations with EDPs, remaining in squad cars, and remaining under cover, is

probative of that inquiry. *See Sargent*, 2015 WL 6447442, at *2-*4 (Dr. McCauley's testimony permitted with respect to his knowledge, experience and law enforcement background; the prevailing use of force standards in the field of law enforcement; and whether officer's use of force was in accord with standardized police procedures given facts of case.)

Defendants also contend that Dr. McCauley's opinion does not satisfy the "fit" requirement because it is conclusory, and therefore not helpful to the fact-finder. (Def.'s Mot. to Preclude 7-8). Defendants' argument on this point consists of citation to certain cases, largely outside this Circuit, in which Dr. McCauley's testimony was viewed as insufficient to raise a genuine issue of material fact for the purposes of summary judgment. (*Id.*). Merely because Dr. McCauley's opinions have been deemed conclusory in other cases in other procedural contexts does not render them so here. Dr. McCauley's opinion in *this case* is based on a review of depositions, relevant procedures and academic literature pertaining to the use of force issue. In the context of a *Daubert* review, I do not find it so conclusory as to be of no assistance to the fact-finder.

Accordingly, I find that Dr. McCauley's opinion—limited to the extent explained *infra*—is relevant to a jury considering whether the officers' use of force was reasonable under the Fourth Amendment.

### C. Invading Province of the Jury

Lastly, Defendants contend that Dr. McCauley's testimony should be precluded because it invades the province of the jury. (Defs.' Mot. to Preclude 3, 8-10; Defs.' Reply Br. 5). Specifically, they seek to preclude the portion of his expert report in which he opines: "[c]onsidering the totality of [the] circumstances, the use of deadly force, as discussed in this report, was unreasonable, unnecessary, unjustified and excessive and the actions of the involved

12

officers caused the harm suffered by [the Decedent]." (Defs.' Mot. to Preclude 10). Plaintiff contends Dr. McCauley's opinions do not amount to legal conclusions because he is opining as to whether the police officers were acting in accordance with standard practices, training, and procedures. (Pl.'s Resp. 8-9). I agree with Defendants that the above cited testimony must be excluded.

Federal Rule of Evidence 704(a) provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704. Still, expert testimony which "merely tell[s] the jury what result to reach" is improper. Fed. R. Evid. 704 advisory committee's note. Accordingly, an expert should not be permitted to testify as to an ultimate legal conclusion in the case, "as to do so would improperly invade the province of the court and the jury." *Toscano v. Case*, No. 11–4121, 2013 WL 5333206, at *8 (D.N.J. Sept. 20, 2013) (citing *AT & T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 534 (3d Cir. 2006)). In the context of an excessive force claim, the Court has explained that "[a]ny testimony that the [d]efendant's use of force was unreasonable under the circumstances or that the [d]efendant unreasonably seized the [p]laintiff would be instructing the jury what result to reach and would be expressing a legal conclusion." *Burger*, 176 F.R.D. at 156 (citing *Wells v. Smith*, 778 F. Supp. 7, 8 (D. Md. 1991) (the question of whether the police officer's use of force was reasonable is "quintessentially a matter of applying the common sense and the community sense of the jury to a particular set of facts . . .; It would interfere inappropriately with that judgment process . . . to allow expert testimony as to what reasonableness is[.]")).

In light of these principles, I agree that the contested portion of Dr. McCauley's testimony should be precluded. The issue for the jury on the Fourth Amendment claim is

whether the use of deadly force was reasonable under the totality of the circumstances faced by the responding officers at the time. To allow Dr. McCauley to opine that the police officers' conduct was unreasonable, reckless, willful, or excessive would answer that very question. *See, e.g.*, *Burger*, 176 F.R.D. at 157 (allowing Dr. McCauley to testify as to whether an officer's actions "were in line with standard police procedures," but prohibiting testimony that the officer's actions were "unreasonable"); *Sargent*, 2015 WL 6447442, at *2 (declining to allow Dr. McCauley to testify that officer's "use of force was unreasonable and excessive under the circumstances."); *Damiani*, 2012 WL 1664029, at *2 (declining to allow Dr. McCauley to testify that police officer conduct was "unnecessary, punitive, and abusive"); *Griffy v. E. Earl Twp.*, No. 06-CV-1280, 2007 WL 6936722 (E.D. Pa. Dec. 21, 2007) (declining to allow Dr. McCauley to testify that the use of force was "objectively unreasonable[,]" "reckless[,]" and that police training was "grossly inadequate[.]").

Therefore, Dr. McCauley's testimony shall be limited to matters of police policies and practices, and the officers' adherence to, or deviation from, the same. To the extent he opines that any observed deviation was unreasonable, reckless, willful or excessive, this reaches the ultimate issue, and shall be precluded.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE